## LENA T. CLEVELAND *vs.* CITY OF BANGOR.

### Penobscot.    Opinion March 1, 1895.

87  259
91  266
87  259
96  173
87  259
98  74
98  75
87  259
99  486

*Way.    Defect.    Street Railway.    Judgment.    Sunday Law.    New Trial.  R. S.,.
c. 18, § 80; c. 124, § 20; Stat. 1885, c. 378, § 8.*

The mere recovery of judgment without satisfaction against a street railway
for personal injuries received by reason of an obstruction, which rendered
the way defective and unsafe for public travel, is not a bar to a suit against
the city for the same cause of action.

*Held,* in this case, that whether the pole in the street supporting the trolley
wire constituted a defect, and whether the misconduct of the horse was
one of the proximate causes of the accident, were questions submitted
to the jury under appropriate instructions.   The court is unable to say that
these findings in favor of the plaintiff were not authorized by the evidence.

The primary object of Sunday legislation has been to secure to private citizens
the quiet enjoyment of Sunday as a day of rest, and to encourage the observ-
ance of moral duties on that day, but not to authorize any arbitrary or
vexatious interference with the private habits and comfort of individuals.
It is not every act of walking or riding on Sunday that constitutes "travel-
ing " within the meaning of the statute.

Walking or riding in the open air in a quiet and civil manner with no object
of business or pleasure except the enjoyment of the open air and gentle
exercise and the consequent promotion of the health, is not in violation of
the Sunday law.

See *Cleveland* v. *Bangor Street Railway,* 86 Maine, 232.   *White* v. *Philbrick,*
5 Maine, 147, overruled.

ON MOTION AND EXCEPTIONS.

This was an action to recover for personal injuries which the
plaintiff received by reason of a trolley-wire pole erected and
maintained on Exchange street, Bangor, which she claimed was
an obstruction in the street, and such a defect as rendered the
street unsafe for public travel.

The only question raised by the exceptions, was to the ruling
of the presiding justice upon the plea of defendant, setting
up as a bar and defense to this action, that the plaintiff had
recovered a judgment against the Bangor Street Railway, by
which the pole was erected and maintained, for the same injuries,
on which judgment and execution issued ; there has been no
satisfaction of that judgment.

The case is stated in the opinion.

*C. P. Stetson and P. H. Gillin*, for plaintiff.

*H. L. Mitchell*, city solicitor, for defendant.

Sunday law: *Tillock* v. *Webb*, 56 Maine, 100; *Cratty* v. *Bangor*, 57 Maine, 423.

When a horse takes fright at some object, for which the municipality is not responsible, runs away and gets beyond control and an injury is received because of a defect in the street, the municipality is not liable as the defect is not the sole producing cause of the accident. *Davis* v. *Dudley*, 4 Allen, 557; *Palmer* v. *Andover*, 2 Cush. 600; *Fogg* v. *Nahant*, 98 Mass. 578; *Fogg* v. *Nahant*, 106 Mass. 278; *Perkins* v. *Fayette*, 68 Maine, 152.

There is no evidence in the case upon which to warrant a finding that this horse was frightened by the pole complained of. He was frightened at some other object and became unmanageable because of such fright, and the giving away of the vehicle to which he was attached, and this was the proximate cause of the injury. *Spaulding* v. *Winslow*, 74 Maine, 528; *Aldrich* v. *Gorham*, 77 Maine, 287.

The charter of the Bangor Street Railway gives the municipal officers other and different powers and duties than are prescribed in the city charter. In the performance of all powers and duties authorized by the street railway charter, the municipal officers and city government do not alone represent the city of Bangor, and by the performance of such duties and powers make the people of Bangor liable for their acts. In the performance of such powers and duties they represent the whole people in acting under a separate and distinct charter from the one granted to the city of Bangor. *Young* v. *Yarmouth*, 9 Gray, 386. The principle contended for is recognized in *Small* v. *Danville*, 51 Maine, 359; *Mitchell* v. *Rockland*, 52 Maine, 118; *Cobb* v. *Portland*, 55 Maine, 381; *Woodcock* v. *Calais*, 66 Maine, 234; *Farrington* v. *Anson*, 77 Maine, 416; *Bulger* v. *Eden*, 82 Maine, 352; *Goddard* v. *Harpswell*, 84 Maine, 499; *Bryant* v. *Westbrook*, 86 Maine, 450.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict for $1100 against the city of Bangor for personal injuries received on Exchange street by reason of an obstruction which she claimed rendered the way defective and unsafe for public travel. The defect alleged was one of the poles erected and maintained by the Bangor Street Railway for the support of the trolley wire used in the operation of that company's road.

The pole in question was located on the westerly side of Exchange street twenty-seven feet northerly from the extension of Washington street. It was set in the street with its outer face eighteen inches, and its inner face nine inches from the curbstone of the sidewalk, the pole being nine inches in diameter at its base. At the time of the accident it "leaned over considerably" into the street. Exchange street is forty-six feet wide between the curbstones, and the distance from the curb, near the location of the pole, to the westerly rail of the track is twenty-one feet.

On Sunday, September 18, 1892, the plaintiff with her husband and two others was riding on Exchange street in a two-seated covered carriage drawn by one horse, the team being in the control of her husband as driver. As they drew near Washington street the horse became frightened at the appearance of one of the electric cars approaching around the corner, and suddenly shied to the right and at the same time sprang forward and brought the carriage in contact with the pole in question, throwing the plaintiff out and causing the injury of which she complains.

The case comes to this court on exceptions and a motion to set aside the verdict as against evidence.

1. The Exceptions.

Prior to the commencement of this action against the city of Bangor, the plaintiff had brought suit against the Bangor Street Railway for the same injuries described in the declaration in this case, and recovered judgment for the sum of $914.57, on which execution was duly issued; but there has been no satisfaction

of that judgment for want of property belonging to that company which the plaintiff could make available for the purpose.

That judgment was duly pleaded by the defendant's counsel in defense of this action ; but the presiding judge ruled that the mere recovery of judgment against the street railway without satisfaction was no bar to a suit against the city.   An exception was taken to this ruling, and it appears in the printed case duly allowed by the presiding justice ; but it is evidently not relied upon, as no allusion whatever is made to it in the elaborate argument submitted by the learned counsel for the defense.

The instruction upon this point was undoubtedly correct.   As every wrongdoer is responsible for his own act, it is a general rule that when two or more participate in the commission of a wrong, the injured party may proceed against them either jointly or severally ; and if severally, whether the separate actions are brought at the same time or successively, each may be prosecuted to final judgment.   But the sufferer is obviously entitled to only one full indemnity for the same injury.  If, however, the several judgments differ in amount he may elect to take his satisfaction *de melioribus damnis* ; or if the defendants are not all solvent he may elect to proceed against the solvent party. But with respect to several judgments recovered at the same time, no such choice " of the better damages " or larger judgment, and no such election to proceed against a party supposed to be solvent, unless followed by actual satisfaction, will prevent the plaintiff from enforcing a judgment against another defendant ; nor will an unsuccessful attempt to enforce a judgment against one wrongdoer, be a bar to a subsequent action against another who is liable for the same wrong.   And it is entirely immaterial whether execution was issued on the prior judgment or not. An unsatisfied judgment against one tort-feasor is no bar to a suit against a joint tort-feasor.   It is not the formal adjudication of a right or the legal precept for its enforcement, but the substantial fact of compensation or its equivalent, which constitutes the bar.

This doctrine not only rests upon principles of sound reason, and manifest justice, but is supported by an overwhelming

weight of authority. It prevails in a great majority of the American states, and has received the unqualified approval of the Supreme Court of the United States. In *Lovejoy* v. *Murray*, 3 Wallace, 1, it was held that judgment in a former suit, with part payment, constituted no bar to the action against the defendant. In the opinion by Miller, J., it is said : "But in all such cases what has the defendant in such second suit done to discharge himself from the obligations which the law imposes upon him to make compensation? His liability must remain in morals and on principle until he does this. The judgment against his co-trespassers does not affect him so as to release him on any equitable consideration." . . . "But when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages. But it is not easy to see how he is so affected until he has received full satisfaction, or what the law must consider as such.

"We are therefore of the opinion that nothing short of satisfaction or its equivalent, can make good a plea of former judgment in trespass, offered as a bar in an action against another joint trespasser, who was not party to the first judgment." In *Sheldon* v. *Kibbe*, 3 Conn. 214, there had been judgment against a co-trespasser who was committed to jail by force of an execution which issued thereon, but the court held these facts to be no bar to the suit against the defendant. In the opinion, Hosmer, C. J., says : "The common law, founded as it is upon reason, and allowing nothing that is nugatory, much less that is pernicious, will sanction no inutility or absurdity. Now what can be more absurd than to authorize the pendency and proceeding of twenty separate actions against persons concerned in a joint trespass, and after the accumulation of vast expense, to hold that the first judgment bars the other suits." See also *Ayer* v. *Ashmead*, 31 Conn. 447 ; *Osterhout* v. *Roberts*, 8 Cowen, 43 ; *Elliott* v. *Hayden*, 104 Mass. 180 ; *Knight* v. *Nelson*, 117 Mass. 458 ; *Savage* ·v. *Stevens*, 128 Mass. 254 ; *Sanderson* v. *Caldwell*, 2 Aik. (Vt.) 195 ; *Elliot* v. *Porter*, 5

Dana, 299 (30 Am. Dec. 688); *Society* v. *Underwood*, 11 Bush. 265 (21 Am. Rep. 214); *Wyman* v. *Bowman*, 71 Maine, 123; Bigelow on Estoppel, 57, 128; Cooley on Torts, (2d Ed.) 158. In Freeman on Judgments, § 236, the author says: "A few cases . . . decide that the mere issuing of an execution is a conclusive election to consider the defendant as exclusively responsible. But a majority of the American cases discountenances this manifest absurdity. . . . How vain and delusive that law must be which declares the right of an injured party to proceed severally against every person concerned in committing an injury; which sustains him until the liability of every wrongdoer is severally determined and evidenced by a final judgment; and which, after thus 'holding the word of promise to his ear, breaks it to his hope' by forbidding him to attempt the execution of either judgment, upon penalty of releasing all the others."

*White* v. *Philbrick*, 5 Maine, 147, is one of the "few cases" that may be cited in support of the doctrine thus characterized by Mr. Freeman as a "manifest absurdity." It appears to have been decided on the authority of the early case of *Brown* v. *Wooton*, Yelverton, 67, and a qualified *dictum* in *Livingstone* v. *Bishop*, 1 Johns. 290; but it stands upon indefensible ground. As stated by the court in *Murray* v. *Lovejoy*, 2 Clifford, 191, "it does not seem to rest upon any substantial basis," and should no longer be followed. In the later case of *Hopkins* v. *Hersey*, 20 Maine, 449, it is held that a collateral concurrent remedy against one not a joint trespasser, is not barred by anything short of actual satisfaction, and the case of *White* v. *Philbrick*, *supra*, is distinguished as a "decision limited to co-trespassers." This technical refinement was obviously suggested to prevent a conflict and avoid the necessity of overruling *White* v. *Philbrick*. But with regard to the point under consideration, no sound reason has been given, and it is believed that none can be assigned for such a distinction between the case of wrongdoers who are jointly and severally liable and of those who are only severally liable for the same injury. In either case the sufferer is entitled to but one compensation for the same injury, and full

satisfaction from one will operate as a discharge of the others. In neither case will anything short of satisfaction from one bar a suit against another. A master for instance is liable for the tort of his servant and a satisfaction from one will discharge both, but they cannot be sued and declared against jointly. So in *Brown* v. *Cambridge*, 3 Allen, 474, the plaintiff brought suit against the Water Company for an injury sustained on account of a trench left in the highway, and, by way of compromise, accepted a small sum in "payment and satisfaction" of all damages in that suit. It was held that he was thereby precluded from maintaining a subsequent action against the city for the same injury. Conversely in *Bennett* v. *Fifield*, 13 R. I. 139 (43 Am. Rep. 17), it was held that judgment with execution against an individual for leaving in the highway an object calculated to frighten horses was no bar to a subsequent suit against the town for permitting it to remain, although the defendant in the former suit had been committed to jail on the execution, and the claim subsequently proved against his estate in bankruptcy. But as Rhode Island was one of the three states in which the error of *Brown* v. *Wooten*, *supra*, had been followed (see *Hunt* v. *Bates*, 7 R. I. 217; S. C. 82 Am. Dec. 592), the court limited the latter case to joint wrongdoers, and distinguished it from *Bennett* v. *Fifield*, *supra*, on the ground that the individual and the town in the latter case could not be regarded as joint tort-feasors. "They were not jointly, but collaterally liable for the same injury," said the court, "by reason of distinct though related torts, and therefore the injured parties until indemnified are entitled to look to either of them remaining undischarged for their damages."

In the case at bar, the liability of the street railway for negligence respecting the location of its posts existed at common law, while the liability of the city for permitting the obstruction to remain is created by general statute. (R. S., c. 18, § 80.) And although the liability of both is reaffirmed in sect. 8, c. 378 of the laws of 1885, for obvious reasons, they cannot be deemed joint tort-feasors with respect to the mode of redress. But it is immaterial. Concurrent remedies exist against them severally for

the same cause. The plaintiff is entitled to indemnity for the injury, but only one indemnity. Satisfaction from the railway company would have been a bar to this suit; but judgment and execution against the company without satisfaction cannot be a bar. Having a judgment against each she will be entitled to choose the larger sum and the solvent party.

II. The Motion.

In the report of the plaintiff's case against the street railway, (86 Maine, 232,) the court say respecting the motion for a new trial: "A careful examination of the evidence reported satisfies us that it was sufficient to authorize the verdict." A careful review of the evidence reported in this case against the city leads us to the same conclusion. True, the ground of liability is essentially different. In the action against the railway the defendant would not have been exempt from liability for the consequences of its own negligence if some other cause for which the plaintiff was not responsible had contributed to the accident. *Lake* v. *Milliken*, 62 Maine, 240. But in this action against the city, it must appear that the defect in the street was the sole cause of the injury. If any other cause for which the plaintiff was responsible, or any other independent cause for which neither the plaintiff nor the city was responsible, proximately contributed to the injury, she cannot recover.

But unlawful traveling on Sunday would bar recovery in either case, and the defendant contends that the verdict was not authorized by the evidence on this point. We are unable to concur in this view. It involves an interpretation of the statute at variance with its true spirit and purpose. It is not every act of walking or riding on Sunday that constitutes "traveling" within the meaning of R. S., c. 124, § 20. It is only unnecessary traveling which is prohibited. Works of necessity and charity are expressly excepted from the prohibition; and "a moral fitness of propriety of traveling under the circumstances of any particular case may be deemed necessary within this section." Parsons, C. J., in *Com.* v. *Knox*, 6 Mass. 76; *Sullivan* v. *M. C. R. R.* 82 Maine, 196. The primary object of such legislation has been to secure to private

citizens the quiet enjoyment of Sunday as a day of rest, and to encourage the observance of moral duties on that day, but not to authorize any arbitrary or vexatious interference with the private habits and comfort of individuals. *Hamilton* v. *Boston*, 14 Allen, 475. In accordance with these views was the decision of the court in *McClary* v. *Lowell*, 44 Vt. 117, holding that it was not unlawful for a father to ride eight miles on Sunday to visit his minor sons and attend to their welfare in another town. And it has been repeatedly held in this State and Massachusetts that walking or riding in the open air in a quiet and civil manner with no object of business or pleasure except the enjoyment of the air and gentle exercise and the consequent promotion of the health, is not in violation of the Sunday law. *O'Connell* v. *Lewiston*, 65 Maine, 34; *Davidson* v. *Portland*, 69 Maine, 116; *Sullivan* v. *M. C. R. R.* 82 Maine, 196, *supra* ; *Barker* v. *Worcester*, 139 Mass. 74.

In the case at bar, the plaintiff was in feeble health, and being unable to walk with comfort had accepted her husband's invitation to ride into the country for the enjoyment of the open air and the benefit of her health. The fact that the companionship of her husband and friends may have enhanced the pleasure of the drive did not render it unlawful. The jury found in favor of the plaintiff under proper instructions and we see no justification for disturbing the verdict on this ground.

But the defendant finally contends that the uncontrollable conduct of the horse and not the obstruction in the street, was the proximate cause or one of the proximate causes of the accident.

The law of causal connection in this class of cases has been maturely considered and critically analyzed in the recent decisions of this court. *Spaulding* v. *Winslow*, 74 Maine, 528; *Aldrich* v. *Gorham*, 77 Maine, 287; *Perkins* v. *Fayette*, 68 Maine, 152; *Moulton* v. *Sanford*, 51 Maine, 127. These authorities all agree that the contributory fault which will bar a recovery against a town for a defective highway must be one of the efficient and proximate causes of the accident, and not a mere condition or occasion of it. But it has been found

impracticable to prescribe by abstract definition, applicable to all possible states of facts, what is a proximate and what a remote cause ; what is a true and efficient cause of a given result, and what is a mere "occasion" or "opportunity" for the operation of the true cause. "Everything which induces or influences an accident, does not necessarily and legally cause it. It might be the agency, or medium, or opportunity, or occasion, or situation, or condition, as it is variously styled, through or by which the accident happened ; but no part of its real and controlling cause. . . . Much must depend upon the circumstances of each particular case, and upon the common sense of the thing." *Spaulding* v. *Winslow, supra.*

Whether the fright of the horse at the electric car shall be deemed the true and real cause of the accident, or only a circumstance which permitted it to happen, must depend upon the character of the horse and the extent of his misconduct. If the horse was not reasonably gentle and safe and became entirely unmanageable from fright, substantially freeing himself from the control of the driver, and the accident resulted from such a want of control, then the fright of the horse might be regarded as one of the proximate causes of the accident. If, however, the horse was ordinarily safe and reasonably suitable for use on the public street, and while being properly driven, started and shied at the sudden appearance of the electric car around the curve, swerving but a few feet from the line of travel, and through only a momentary loss of control by the driver brought the carriage in contact with the pole in the street, in such case the conduct of the horse could not in reason and justice be considered as causing the accident. *Spaulding* v. *Winslow* and *Aldrich* v. *Gorham, supra.*

This test of a town's liability in such a case has also been applied in Massachusetts. In *Titus* v. *Northbridge*, 97 Mass. 258, it is said : "The court are of opinion that when a horse by reason of fright, disease or viciousness becomes actually uncontrollable so that his driver cannot stop him, or direct his course, or exercise or regain control over his movements, and in this condition comes upon a defect in the highway . . . by which

an injury is occasioned, the town is not liable for the injury, unless it appears that it would have occurred if the horse had not been so uncontrollable. But a horse is not to be considered uncontrollable that merely shies or starts or is momentarily not controlled by the driver." As stated by PETERS, C. J., in *Spaulding* v. *Winslow, supra,* "It is not a fault in a horse to be spirited, or to start up quickly or to shy and shear from objects to a certain extent. Such things are very common occurrences and cannot be prevented or effectually guarded against by the owners or drivers of horses. It is not unreasonable to drive horses of such description upon our public roads. Therefore, it would not be reasonable to say that the fright of the horse, under such circumstances . . . was a proximate cause of the plaintiff's injury."

This doctrine is not in conflict with the rule applied in *Moulton* v. *Sanford,* and *Perkins* v. *Fayette, supra.* In each of those cases it was evidently found that the horse had passed entirely beyond the control of the driver, and that his misconduct was one of the proximate causes of the accident.

In the case at bar, whether the pole in the street constituted a defect, and whether the misconduct of the horse was one of the proximate causes of the accident, were questions submitted to the jury with appropriate instructions to which no exceptions were taken. They found in favor of the plaintiff, and we are unable to say that the contrary inference is the only reasonable inference. The horse had been driven by the plaintiff's husband prior to that time and he had been considered gentle and safe. The motor-man on the car says the horse was "scared of the car the same as other horses are." The horse was within ten or fifteen feet of the pole when he took fright at the car, and shied a few feet to the right. The driver was holding the reins with both hands, and only momentarily lost control of the horse. In all probability he would have regained control of him and avoided an accident if the pole had not obstructed the traveled way. Under these circumstances it is not unreasonable to say that the fright of the horse was not the real cause of the accident. On the other hand, it might reasonably have been

anticipated that such a contingency would arise and that a pole thus located in the street would be a source of danger to public travel and cause an accident either in the precise manner in which it did cause it or in some similar way.

*Motion and exceptions overruled.*