MARCIA DAVIS *vs.* FRED SIMPSON.

MARCIA DAVIS *vs.* FRED SIMPSON.

Knox.    Opinion, December 5, 1941.

*Frank A. Tirrell, Jr.,* for plaintiff.

*Zelma M. Dwinal,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

HUDSON, J.  These cases involving an automobile collision at a street intersection in the town of Camden were heard by referees who reported that in each the plaintiff was entitled to judgment. Exceptions were taken to the acceptance of the reports. Presented are two questions: viz., whether the plaintiff had the status of a trespasser at the time of the accident and whether she was guilty of contributory negligence.

The plaintiff's unlicensed daughter, fourteen years old, was driving, accompanied by her mother who was licensed. R. S. 1930, Chap. 29, Sec. 39, provides:

> "No person shall operate a motor vehicle upon any way in this state unless licensed according to the provisions of this chapter; but the provisions of this section shall not prevent the operation of a motor vehicle by an unlicensed person, not less than fifteen years of age, if riding beside a licensed operator in said vehicle for the purpose of becoming familiar with the use and handling of a motor vehicle preparatory to taking out license for driving; and provided, further, that such unlicensed person has not theretofore had a license revoked, suspended, or finally refused."

Sec. 33 of said Chap. 29, as amended by Chap. 46 of the Public Laws of 1937, reads in part:

"Before the license is granted, an applicant shall be required to pass such physical examination and such examination by actual demonstration or otherwise as to his qualifications to operate a motor vehicle as the said secretary shall require; provided said secretary may waive such examinations in the case of applicants who have been duly licensed by this state to operate a motor vehicle during any one of the 3 preceding calendar years; and no license shall be issued until the said secretary is satisfied that the applicant is a proper person to receive it. No license shall be issued to any person under 15 years of age."

The plaintiff's daughter had not arrived at the age when she could lawfully learn to drive, but nevertheless she had been driving for over a year and was considered by her father, who ran a garage, and by her mother as well, to be a competent and experienced driver. There was no evidence to the contrary. But, at the time, she was not learning to drive, and consequently was acting in violation of law. It is not contended that she was the agent or servant of the plaintiff.

FIRST EXCEPTION. Was she a trespasser so that the duty of others lawfully on the highway, both to her and her mother, the plaintiff, was simply "to refrain from wilful and wanton injury"? The precise point seems not to have been determined in this state, but that one who operates *an unregistered motor vehicle* on the highway is not a trespasser was determined in *Cobb* v. *Power & Light Company*, 117 Me., 455, 104 A., 844. In the recent case of *Elliott* v. *Montgomery*, 135 Me., 372, 197 A., 322, this court, on page 375, quoted as follows from the opinion in the Cobb case:

"Such violation (of the registration statute) may, in certain cases be evidence of negligence but it is not conclusive. The application of this governing rule to the case at bar is obvious. The non-registration had no causal connection with the accident whatever. It no more contrib-

uted to the collision in this case than did the color of the car."

Thus, it is settled law in this jurisdiction that one operating an unregistered motor vehicle is not a trespasser and may recover for injuries proximately caused by negligent acts of another (not a municipality), unless his violation of law is a proximate cause of the accident, but such violation is prima facie evidence of negligence. ". . . the right of a person to maintain an action for a wrong committed upon him is not taken away because at the time of the injury he was disobeying a statute, provided this disobeyance in no way contributed to the injury. He is not placed outside the pale of the law merely because he was committing a misdemeanor. That would be a wrong to the public, but not to the other party in the civil action." *Cobb* v. *Power & Light Company,* supra, on page 462, 104 A., 847.

In the Cobb case, *supra,* decisions from other states are cited, among which particularly is *Dudley* v. *Northampton Street Railway,* 202 Mass., 443, 89 N. E., 25, 23 L. R. A. (N. S.), 561, holding differently. Distinguished are *McCarthy* v. *Inhabitants of Town of Leeds,* 115 Me., 134, 98 A., 72, and *McCarthy, Adm'r* v. *Inhabitants of Leeds,* 116 Me., 275, 101 A., 448, L. R. A., 1918D, 671, both town cases for recovery of damages on account of defects in highways, where it was held that such were not maintainable, because they were statutory actions, and the rights of the traveling public and the liability of the municipality were limited.

The doctrine of the McCarthy cases, *supra,* is extended to the operation of an automobile on the highways *by an unlicensed operator* in *Blanchard* v. *Portland,* 120 Me., 142, 113 A., 18, where it is stated on page 145:

"It must follow that the highways of the State are closed alike to unregistered motor vehicles and to unlicensed operators. . . . in actions against towns to enforce a statutory liability for defects in the highways, it is not a question of causal connection in either case between the

violation of the statute and the happening of the accident; the unregistered car and the unlicensed operator are alike expressly forbidden by the statute to pass along the highway."

This court does not follow the Massachusetts decisions in holding "an unregistered car a trespasser and an outlaw, having no rights which even a negligent party is bound to respect, and to whose occupants no duty is owed by the traveling public except to refrain from wilful and wanton injury." *Cobb* v. *Power & Light Company*, supra, on page 458, 104 A., 845.

Note is taken that in the Cobb case mention is made of *Bourne* v. *Whitman*, 209 Mass., 155, 171, 95 N. E., 404, 35 L. R. A. (N. S.), 701, "where it was held that an operator who has violated the statute which provides that 'no person shall operate an automobile . . . unless specially licensed' etc., may recover in an action of tort, his unlawful act being regarded as punishable under another section of the statute, but not as rendering him a trespasser on the highway." *Cobb* v. *Power & Light Company*, supra, on page 459.

It would appear that there is at least an inferential dictum in the Cobb case, *supra*, that an unlicensed operator is not a trespasser on the highway except as to municipalities, and so is entitled while thereon to observance of due care on the part of other travelers.

We see no valid distinction between the case of an unregistered vehicle and an unlicensed operator which would justify holding the latter a trespasser and the former not. These statutes seek the same end, safety of travelers upon the highways, and should be attended, when violated, with like legal consequences. The violator of the license statute should not be held entitled to a less degree of care upon the part of other travelers than the violator of the registration statute.

The weight of authority it would seem is in accord with this view. In Sec. 141, 5 Am. Jur., it is stated on page 586, 104 A., 846:

"The fact that the operator of an automobile has no

operator's license, as required by statute, does not, according to the majority view, bar recovery for an injury to him through the negligence of another where the lack of such license has no causal connection with the injury. . . . . Even in Massachusetts, where the owner or operator of the unlicensed automobile cannot recover, the operator who has no license is not precluded from recovery by that fact alone; at least one who has employed an unlicensed person to operate the car is not precluded from recovery."

In Huddy, Encyclopedia of Automobile Law, 9th edition, it is stated in Vols. 1-2, Sec. 249, on page 482:

"The general rule is that the non-registration is not a proximate cause of the injury and does not affect the right of recovery, but a contrary rule is adopted in Massachusetts and a few other States. The situation with reference to an unlicensed chauffeur is analogous, and it is to be expected that the courts will hold that the failure to procure a license will not preclude a recovery for injuries sustained while driving a motor vehicle. The courts so hold, as far as the statutes are similar."

Point is made by the defendant that there is a governing distinction between the operation of a motor vehicle by a learner over fifteen when accompanied by a licensed operator and operation by one not old enough under the statute to learn. But we do not see it. In each case it is a violation of law and each is governed by the general rule that violation of law simply raises a presumption of negligence which may be overcome by other evidence.

We are aware that in some jurisdictions it has been held that statutes prohibiting the operation of motor vehicles by children under a certain age constitute a legislative declaration that such are incompetent to drive on the public highways. We do not think our statute goes to that extent. As a matter of fact, it cannot be denied that the fifteenth birthday does not spell the difference between competence and incompetence.

One under fifteen, due to instruction, experience, and an automobile sense, may in fact be more competent than one over that age. Rather than declare the under-age operator a trespasser and "an outlaw" on the highway, we prefer to burden him only with the "presumption of negligence," as above stated, and then let the triers of facts determine whether the evidence in the case overcomes the presumption. As stated in *Tibbetts* v. *Harbach,* 135 Me., 397, 198 A., 610, on page 403:

"In the last analysis, the violation is merely evidence to be considered with all other attending facts in determining whether the disobedient driver exercised due care in the operation of his vehicle under the circumstances."

In the instant cases the referees must have found that the admitted violation of the law was not a proximate cause of the accident. That was a factual question for them and in our judgment their finding is justified by the record.

Truly, when the owner of an automobile allows an inexperienced and unlicensed person to drive his automobile negligently in his presence and under his control, the owner is liable in damages proximately resulting as if it had been his own negligence. *Kelley* v. *Thibodeau* and *Kelley* v. *Same,* 120 Me., 402, 115 A., 162. But on the record in these cases, the referees would have been justified in finding, and no doubt did find, that the driver was competent and experienced. The defendant takes nothing under his first exception.

SECOND EXCEPTION. Was there contributory negligence? On the day of the accident, plaintiff and her daughter were on their way to a picnic, the daughter driving and sitting by the side of her mother, who was a licensed operator. The mother testified that she was not exercising control over her daughter's driving "because she knew how to drive. I didn't need to," and was permitting her to operate the automobile "in her own way."

They were proceeding easterly on Elm Street, which crosses Park Street, on which the defendant was traveling southerly.

The plaintiff's automobile had the right of way and yet its driver was duty bound to proceed with due care under the then attending circumstances. *Kimball* v. *Bauckman,* 131 Me., 14, 18, 158 A., 694; *Petersen* v. *Flaherty,* 128 Me., 261, 263, 147 A., 39; *Fitts* v. *Marquis,* 127 Me., 75, 140 A., 999.

On the westerly side of Park Street, a short distance northerly of the intersection, there was a stop sign. One's vision of Park Street for a considerable distance on his approach from Elm Street is only partly obstructed, not by a building there in the junction of the streets but by an embankment. The daughter testified that first she looked to the right and then to the left and did not see the approaching car of the defendant until she was within about two car lengths from the intersection.

The plaintiff mother testified ". . . I looked to the right on my side of the car to see if another car was approaching from that direction, and just as I turned to the left to look on the other side Leatrice started to scream and I saw that this car was coming from the left and we just smashed together." Both testified that their car was proceeding from twenty to twenty-five miles per hour, and that when the defendant's car was seen, it was from three to four car lengths northerly of the intersection and one car length northerly of the stop sign.

Whether the defendant stopped at the sign was in square conflict. The defendant claimed he did, but this was stoutly denied by the plaintiff and her daughter. There was testimony by a defense witness that after the defendant's automobile came to rest it was in low gear. However, the referees might well have considered it exceedingly improbable that, if the defendant had stopped at the sign, the collision would have happened, since the distance from the stop sign to the point of contact was so short and the possibility of stopping the defendant's car, starting from the stop sign, so easy of accomplishment. Apparently the referees found that the defendant did not stop. Defendant's vehicle, when first seen by

the plaintiff and her daughter, as above stated, was northerly of the stop sign, and they had a right to consider that the defendant would observe the law as to stopping, which would give the plaintiff's automobile time for safe entrance into the intersection. One "may assume, at all events, until the contrary appears, that approaching automobiles will be driven carefully. He is not bound to anticipate negligence on the part of their drivers." *Dill* v. *Androscoggin & Kennebec Railway Co.*, 126 Me., 1, on page 3, and cases there cited, 140 A., 909.

Whether the defendant's car was stopped at the signal or not was a question of fact for determination by the referees, as well as other facts bearing upon the question of contributory negligence. "In the reference of cases by rule of court, the decision of the referee upon all fact questions, where findings are supported by any evidence, is final." *Brunswick Coal & Lumber Co.* v. *Grows*, 134 Me., 293, 295, 186 A., 705, 706; *Benson* v. *Town of Newfield*, 136 Me., 23, 27, 1 A., 2d, 227. The burden upon the defendant to show there was no such evidence has not been sustained.

The entry will be,

*Exceptions overruled in both cases.*