Ruth PACKARD, Goldie Lourie, Joseph Lourie, Ada Tapper and Nathan Tapper, Plaintiffs-Appellees,

v.

Marjorie G. WHITTEN and the Coca-Cola Bottling Plants, Inc., Defendants-Appellants.
FERN'S TAXI, INC., Defendant,

v.

Marjorie G. WHITTEN and the Coca-Cola Bottling Plants, Inc., Cross-Claimants-Appellants,
and
Fern's Taxi, Inc., Cross-Claimant-Appellee.

Supreme Judicial Court of Maine.

Feb. 24, 1971.

**170**

Linnell, Choate & Webber, by G. Curtis Webber, John R. Linnell, Auburn, and John A. Platz, Lewiston, for Ruth Packard.

Berman, Berman & Simmons, by Jack H. Simmons, Lewiston, for Goldie Lourie & Ada Tapper.

Mahoney, Desmond, Robinson & Mahoney, by Lawrence P. Mahoney, Portland, for Marjorie G. Whitten.

John G. Marshall, Marshall, Raymond & Beliveau, Lewiston, for Coca-Cola.

Ralph I. Lancaster, Jr., Portland, for Fern's Taxi Inc.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY and WERNICK, JJ.

WEATHERBEE, Justice.

These appeals by two of three Defendants from judgments in personal injury actions present a number of issues as to procedure, sufficiency of evidence and the correctness of the award of damages and they direct our attention once more to the question of adoption of the concept of comparative contribution by joint tortfeasors.

Walnut Street in the City of Lewiston runs east and west and, in the area here in question, it is a through way in that traffic on the streets intersecting it is controlled by stop signs. Bartlett Street, running north and south, is one of these intersecting streets. Nadeau's store sits at the southeast corner of the intersection of these two streets. This is described as a "busy" intersection. The streets are approximately 36' wide and two way traffic is permitted on both streets. A 5' wide sidewalk separates the Nadeau store from the edge of Walnut Street.

Sometime between 9 and 10 in the morning of August 3, 1967 a cab owned by Fern's Taxi, Inc. (Fern's) and driven by Fern's driver was transporting for hire three passengers, the Plaintiffs Mrs. Packard, Mrs. Tapper and Mrs. Lourie, westerly along Walnut Street. The weather was clear, the street surface dry. As the taxi neared the intersection, the Defendant Mrs. Whitten, alone in her automobile, was also approaching it on Bartlett Street headed north. At this moment a large delivery truck owned by Defendant Coca-Cola was stopped at the curb at the southerly side of Walnut Street, near the intersection, while the driver was making a delivery at Nadeau's store.

Mrs. Whitten testified that she stopped at the stop sign before entering Walnut Street and looked to her right but found that her view of Walnut (where the taxi was in fact approaching) was blocked by the Coca-Cola truck. She remained stopped a few moments wondering what to do and then "edged out" into the intersection. As she did she looked again to her right where her changed position permitted a "slanting" view between the truck and store and she saw no approaching vehicle. As she passed the rear of the truck she said she looked again and saw nothing. She then proceeded into the intersection at a speed of about 15-20 m. p. h. and her car was struck by the taxi when she was in the northeast quadrant of the intersection. She was looking straight ahead and didn't see the taxi until it hit her. (The only other witness to her conduct at this point said that she did not stop at the intersection but "kept crawling out".)

As he approached the intersection the driver of the taxi was travelling 20-25 m. p. h. He noticed that the Coca-Cola truck was completely blocking his view to his left down Bartlett Street. He continued into the intersection at a speed of 20–25 because "that's a through street". He did not see Mrs. Whitten's car until it pulled out from behind the truck at which time he was 4 to 8 feet from the intersection. He "hit his brakes" but it was so close to him that he was unable to stop before colliding with it, striking her car on the right rear door.

The three female Plaintiffs claim to have been injured by the impact. Mrs. Packard brought a complaint against Mrs. Whitten and Coca-Cola (No. 3841) and Mrs. Whitten impleaded Fern's. Mrs. Lourie and her husband sued all three Defendants (No. 3900) and Mrs. Tapper and her husband sued all three Defendants (No. 3901). Mrs. Packard then sued Fern's (No. 4037). All three Defendants cross-claimed against each other, adequately, they agree. The three actions (Nos. 3900, 3901 and 3841) were consolidated for trial. No 4037 was treated by the parties as though included in the order of consolidation. By agreement the actions of

the Louries and the Tappers were tried on liability only while Mrs. Packard's case was heard on liability and damages. At trial it was agreed that the Defendants raised no issue as to the due care of the Plaintiffs.

In chambers the Presiding Justice and counsel discussed the manner in which the complicated issues should be submitted to the jury and the Justice stated that in case of verdicts for the Plaintiffs against either two or three Defendants his judgment would apportion the verdict equally. Counsel suggested to the Justice that if this matter came before the Law Court, it might arrive in a posture appropriate for the Court's examination of the concept of the theory of proportionate contribution. (See Tufts v. Hatch, Me., 248 A.2d 606 (1969)). It was pointed out that in the event of the adoption of this principle by the Law Court, an "academic" finding by the jury of the comparative causal fault of each Defendant might make unnecessary a retrial of the cases. The Justice agreed and for this purpose he then submitted appropriate interrogatories from which the jury determined the comparative percentages of negligence.

The jury returned verdicts for all three Plaintiffs against Mrs. Whitten and Coca-Cola and for Defendant Fern's against all three Plaintiffs and also for Fern's on Mrs. Whitten's and Coca-Cola's cross-claims for contribution. Mrs. Packard was awarded damages against Mrs. Whitten and Coca-Cola in the amount of $90,-000. The jury also made the "academic" determination that Fern's was guilty of no negligence and that of the total Defendants' negligence 75% was attributable to Mrs. Whitten and 25% to Coca-Cola.

On March 19 judgments were entered in accordance with the jury verdicts. On Mrs. Packard's action, her judgment was against both Defendants Mrs. Whitten and Coca-Cola for $90,000 and costs.

None of the Plaintiffs appealed from the judgments in favor of Defendant Fern's. Both Defendant Mrs. Whitten and Defendant Coca-Cola filed notice of appeal. The appeals of Coca-Cola from the judgments of the Presiding Justice and from his denial of its motions for new trial were timely.

Three threshold questions appear:

1) Were Mrs. Whitten's appeals timely?

2) In view of the failure of the Plaintiffs to appeal the judgment in favor of Fern's, is the issue of Fern's contribution before the Court on appeal?

3) Are the judgments for the Louries and the Tappers properly before this Court on appeal?

*First. Timeliness of Mrs. Whitten's appeals.*

As we have noted, on March 19 a judgment was entered in favor of Plaintiff Mrs. Packard against Defendant Mrs. Whitten and Coca-Cola for $90,000. Her complaint against Fern's was ordered dismissed and no order was made on the cross-claims. This was the first of a confusing series of judgments the validity of which will determine the timeliness of Mrs. Whitten's appeals. From which should Mrs. Whitten's time for appeal run? Time periods for appeals, for motions, for new trials and for relief from a judgment (M.R.C.P. Rules 73(a), 59 (b) and (e) and 60(b)) are tied to the time of entry of the judgment. (Future references to rules by number refer to the Maine Rules of Civil Procedure).

The verdicts of the jury were special verdicts in the nature of answers to interrogatories. Rule 49(a). In such cases it becomes the duty of the *Presiding Justice* to direct judgments to be entered which are in accord with the jury's answers to the interrogatories. Rule 58; Field, McKusick and Wroth, Maine Civil Practice § 58.4. The *Clerk* is authorized

to enter judgment only in cases where general verdicts were returned. Field, McKusick and Wroth, supra, § 58.3.

The March 19 judgment was entered by the Clerk and not ordered by the Justice and was thus invalid.

On April 9 judgments—similarly invalid—were entered by the *Clerk* in favor of Fern's against the Plaintiffs Tappers and Louries and the other two cross-claimants and for Mrs. Packard against Mrs. Whitten and Coca-Cola in the amount of $90,000.

On April 17 the *Justice* ordered judgment for Mrs. Packard against Mrs. Whitten and Coca-Cola and for Coca-Cola against Mrs. Whitten for contribution in accordance with the decree with which this judgment was filed. In this decree (labelled "Facts") the Justice stated that he had concluded that he should reverse his position at trial and adopt the principle of comparative contribution and so he ordered judgment for Coca-Cola on its cross-claim for contribution in the amount of $67,500 plus 75% of the costs. This was the first validly ordered judgment for Mrs. Packard and on apportionment of contribution and Mrs. Whitten's time for appeal started running at this point—April 17—and Mrs. Whitten's appeal was not filed within 30 days from this date.

However, on May 9 the Justice filed amendments to these Findings of Fact and to this judgment in which he repeated the judgment for Coca-Cola against Mrs. Whitten for $67,500 plus 75% of the costs on its cross-claim *and added a judgment for Mrs. Whitten against Coca-Cola for $22,500 on its cross-claim*. On May 9 he also ordered filed an amended judgment for Fern's against the three Plaintiffs and against Mrs. Whitten and Coca-Cola on contribution. It is agreed that Mrs. Whitten's appeal, although filed on June 9, is (for reasons which do not concern us here) to be considered as filed within 30 days of May 9. But was the May 9 judgment valid?

The importance of achieving finality in litigation is recognized by the Rules. Rule 59(e) authorizes a Justice to amend his judgment on motion brought within 10 days, a time limitation which was not met here. Rule 60(a) makes provision for correction of "clerical mistakes" in judgments at any time by the court on its own initiative but this amendment could not be considered the correction of a clerical mistake. Rule 60(b) authorizes the court on motion brought within a reasonable time to relieve a party from a judgment for certain enumerated reasons and (subsection (6)) for "any other reason justifying relief from the operation of the judgment". We consider that the Rule is not intended to prohibit the court from acting on its own motion in some appropriate situations but requires notice and hearing in cases where the invalidating of the judgment depends upon determination of facts. Willette v. Umhoeffer, Me., 245 A.2d 540 (1968).

■ No such notice and hearing were necessary here. In his April 17 findings and judgment the Justice had carefully and thoroughly explained the reasoning from which he had concluded that although each Defendant was liable to Mrs. Packard for the full amount of the verdict, the one who paid the full amount of the verdict or more than his proportional part (if one did) should be entitled to contribution from the other in the amount represented by that other's percentage of the total causal negligence of the Defendants. The amended finding was structured to achieve this result and it was within the discretionary power of the Justice to add it to his previous judgment. Sleek v. J. C. Penney Company, Inc., (3rd Cir. 1961) 292 F.2d 256; Barron and Holtzoff, Federal Practice and Procedure, § 1329.

(At the time the Justice filed the May 9 amended judgment just discussed he also filed the first valid judgment—also called an amended judgment—for Fern's against Mrs. Whitten and Coca-Cola on their cross-claims for contribution.)

Mrs. Whitten's appeal of June 9 is addressed to the judgment of May 9 (There were two. Both referred to contribution as to Mrs. Packard) but the appeal recited *arguendo* that this judgment "incorporates all prior judgments and findings of fact in civil docket nos. 3841, 3900, 3901 and 4037 and the judgments incorporated therein by reference in all cross-claims and counterclaims". The judgment itself made no such reference. The three Plaintiffs argue that *this* judgment in no way concerned *their* interests which had been determined in the *previous* judgment, the appealable time as to which had long since expired. Did the Justice's May 9 judgments result in a new running of Mrs. Whitten's 30 days for appeal?

We find no helpful authority on the point and counsel have suggested none. Rule 73(a) permits the Justice to extend the time for appeal 30 days upon a showing of excusable neglect. If Mrs. Whitten's counsel had sought such an extension based upon a claim that he had considered the amended decree to have supplanted the earlier one, the Justice would have been justified in granting the extension, in view of the novelty of the issue. Mrs. Whitten's appeal would then have been within such a 30 day extension.

Certainly the better practice would have been for Mrs. Whitten to have filed a notice of appeal from the previous (April 17) judgment rather than to rely on the amendment. However, the situation is novel under our rules and we are constrained to resolve this issue in favor of the appellant. Mrs. Whitten's appeal was timely as to Mrs. Packard's judgment, as to the judgment for contribution on Mrs. Packard's damages and as to Fern's judgment of May 9 concerning contribution.

On March 26 the Justice *did* order a judgment entered for the Louries and Tappers against Mrs. Whitten and Coca-Cola on liability only and for Fern's against the Louries and Tappers. This was a valid judgment. The Justice's amended judgment of May 9 in no way affected this March 26 judgment. Mrs. Whitten's appeal of June 9 was too late as to this March 26 judgment in favor of the Louries and Tappers.

*Second. The issue of Fern's contribution.*

However, the May 9 amended judgment *did* refer by docket number to the actions of the Louries and Tappers and it made the first valid judgment for Fern's against Mrs. Whitten and Coca-Cola on their cross-claims. So Mrs. Whitten's appeal of June 9 *was* in time to keep alive the issue of contribution as to Louries and Tappers and Mrs. Packard.

It will be recalled that Defendant Fern's received a judgment against all three Plaintiffs and none of the Plaintiffs appealed. The precise issue here presented to us is this: After a jury's determination that Fern's was guilty of no causal negligence toward the three Plaintiffs—a determination which is final as far as the three Plaintiffs are concerned—can the other two Defendants-Cross-claimants present this identical issue on appeal?

The right of one joint tort-feasor to contribution from another is a derivative right based upon a final determination that negligence of the cross-claim defendant contributed to the plaintiff's injury. C & L Rural Elec. Coop. Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337 (1953); Troutman v. Modlin (8th Cir. 1965) 353 F.2d 382. This determination may be made by a judgment in favor of the injured party or, when the injured party has not included the cross-claim defendant in his action, by a finding of concurring negligence which *would* have entitled the injured party to such a judgment if he had sought one. Walker v. Kroger Grocery & Baking Company, 214 Wis. 519, 252 N.W. 721, 92 A.L.R. 680 (1934). In the present case the injured parties *had* sought to prove causal negligence against Fern's and had failed. Does the Plaintiffs' failure to appeal de-

termine the issue finally against the Defendants? We hold that it does not.

In Hobbs v. Hurley (infra and later discussed), the injured party, in a previous action, had alleged that four persons had jointly contributed to his injury but the jury had found only Hobbs and Hurley liable. There had been no appeal. Hurley, when later sued for contribution sought to reduce his proportion of contribution by showing that the other two had also contributed to the injury. The Court held that the rights of the parties had been fixed by the original judgment which could not later be attacked collaterally.

A different situation exists here under our present Civil Rules. M.R.C.P. Rules 13 and 14, permitting cross-claims and third party practice, make possible the simultaneous consideration of the rights of all concerned parties thus avoiding the necessity of a second separate action such as that with which Hobbs v. Hurley was concerned.

Here, all eight parties had interests in the determination of the issue of Fern's causal negligence and also in its review on appeal. The inaction of the three Plaintiffs cannot equitably control the appeal rights of the Defendants-Cross-claimants. Although Mrs. Whitten's and Coca-Cola's rights of action are derived from the Plaintiffs, they have independent rights of appeal. The appeals of Mrs. Whitten and Coca-Cola have preserved this issue for our examination on appeal, but only so far as it concerns contribution.

*Third. Ripeness for appeal.*

On March 26 the Justice directed judgment for the Louries and the Tappers on liability only. Timely appeals were taken by Coca-Cola. Only final judgments are ripe for appellate review. Field, McKusick & Wroth, supra, § 731. This Court has frequently declined to accept piecemeal review. Hand v. Nickerson, 148 Me. 465, 95 A.2d 813 (1953). Here, the issues of their damages remain untried and may, of course, eventually be the subject of appellate review.

However, because of the exceptional posture of the appeals in the Lourie and Tapper cases we feel we should relax the final judgment rules in these cases and dispose of these appeals. Their liability issues are identical to those of Mrs. Packard. (Mrs. Whitten's belated appeals as to the Louries and Tappers would have presented no appealable issues and were doubtless attempted because of concern that her appellate rights as to contribution might otherwise be lost.)

*Liability.*

*Mrs. Packard vs. Mrs. Whitten.*

No liability issues are presented in the appeal of Mrs. Packard's judgment against Mrs. Whitten—only damages, to be discussed later.

*Mrs. Packard, the Louries and the Tappers vs. Coca-Cola.*

The Plaintiffs' claims against Coca-Cola were based entirely upon negligence in permitting its truck to stand within 25 feet of the corner of curbs at an intersection, thus establishing prima facie validity of the ordinance. 30 M.R.S.A. § 2155. The jury could have concluded from the ensuing testimony that the Defendant Coca-Cola's truck had been left standing within 25 feet of the intersection and that its position there at that time obstructing the views of Mrs. Whitten and the driver of the taxi was one of the proximate causes of the collision. Coca-Cola attempted to rebut the prima facie validity of the ordinance, first by seeking to prove by the testimony of the librarian of the Lewiston Sun and Journal that it had not been published as was required by the City Charter. Her testimony failed to establish this fact as her examination of the volumes of newspapers for the related period had been conducted with another person who had

examined some of the volumes of the crucial period while the librarian was inspecting others. The other person's testimony would also have been necessary to establish absence of publication. It was absent.

The City Charter required that city ordinances be approved by a Justice of the Supreme Judicial Court before becoming effective. This ordinance was approved by an Active Retired Justice of the Supreme Judicial Court. R.S.1944, chap. 91, § 6 which was then controlling provided that an Active Retired Justice shall

> " * * * constitute a part of the court from which he has retired and shall have the same jurisdiction and be subject to the same restrictions therein as before retirement, except that he shall act only in such cases and matters and hold court only at such terms and times as he may be directed and assigned to by the chief justice of the supreme judicial court. * * *"

■ The Defendant Coca-Cola contends that the record does not demonstrate the Active Retired Justice's authority to act in this particular matter. We must bear in mind that the Plaintiff had established prima facie proof of the validity of the ordinance. Therefore, to establish lack of approval by a Justice the Defendant was required to show the Active Retired Justice's *lack* of authority to perform this particular act. Defendant has not done this.

■ Defendant Coca-Cola also urges that as the office of Justice of the Supreme Judicial Court is a constitutional office the Legislature exceeded its constitutional powers in enacting the statute defining the duties of Active Retired Justices. There appears to us no doubt as to the Legislature's authority here. While the Court was established by the Constitution, (Constitution of Maine, Art. VI, sec. 1) it was left to the Legislature to prescribe the number of Justices constituting the Court, their powers, emoluments, conditions of retirement, etc. The Legislature here, after exercising its prerogative of fixing a retirement date, also provided conditions under which a Justice who chose to retire might also continue to perform certain limited judicial services.

Our conclusion that Defendant failed to produce evidence which could overcome the prima facie validity of the ordinance makes it unnecessary for us to consider the propriety of the Presiding Justice's undertaking to rule on proof of validity as a matter of law.

■ Finally, Defendant Coca-Cola urges that although its truck may have been positioned within 25 feet of the intersection it was "parked" there and that section 101.11 of the traffic ordinances of the City defines parking as meaning the standing of a vehicle "otherwise than temporarily for the purpose of, and while actively engaged in loading or unloading". Thus, Coca-Cola contends that its truck was not parked at the intersection in violation of City ordinance because its driver was engaged in the act of unloading.

In construing these ordinances we note that the section which the Plaintiffs claim the Defendant violated prohibits not only "parking" but also "standing" and "stopping" of a vehicle. We conclude that it was the intention of the enactors of the ordinance to prohibit the "standing" of a motor vehicle within 25 feet of an intersection whether unloading or not, doubtless because of considerations of public safety as distinguished from mere considerations of convenience of shoppers, drivers, businesses, etc. which might dictate many parking regulations.

■ The evidence supports the jury's finding of causal negligence on the part of Defendant Coca-Cola.

*Mrs. Packard's damages.*

■ At the time of the accident Mrs. Packard was a woman of 62, married but

separated from her husband and employed by her brother in a clerical capacity. When her doctor saw her in the accident room immediately following the collision she had a large cut on her leg that required suturing. She had numerous extensive bruises on her head, face, wrist, leg and shoulder together with some scratches and she complained of pain in her neck, breasts, hips and abdomen. The doctor described the bruises and scratches as superficial but resulting in discomfort. X Rays were negative. She did not remain in the hospital. Her cut and the scratches were healing and the bruises and tenderness were disappearing when he saw her a week and two weeks later but her general condition was deteriorating and on the latter visit he admitted her to the hospital. Her condition continued to worsen up to time of trial. She has never returned to work and in the opinion of her doctor she is suffering from a traumatic neurosis from which she will never recover and which has caused her to be permanently incapacitated to a serious degree. He defined traumatic neurosis as a group of symptoms brought on by an injury.

There was very little dispute as to Mrs. Packard's health before and after the accident. Before, her health was delicate at least. She had been hospitalized about twenty times. She had undergone surgery for a cervical polyp, an appendectomy, a hysterectomy and for an intestinal obstruction (twice). Other serious illnessses included pneumonia (twice), hemoptysis, and a nervous breakdown and she was found to be "full of adhesions". She had two hernias, suffered from frequent periods of abdominal pain, nervousness, unsteadiness, frequent diarrhea, abdominal gas and cramps and occasionally had general aches and pains. She weighed only about 100 pounds. X Rays and laboratory tests had indicated that her symptoms were then functional and organic and due to nervous tension. The jury could have found, however, that in spite of her frail health she was before the accident steadily employed, did her own housework and enjoyed a normal social life which included participating in bridge, dancing and swimming.

After the collision, her condition deteriorated steadily with brief periods of small improvement during four hospitalizations. She could not eat, suffered from actual malnutrition and weighed as low as 77 pounds. A vicious cycle developed in which as she got less nourishment she had less resistance to pain. As her discomfort increased, her ability to tolerate food further decreased. She has nausea, abdominal pains, gas and various aches and is extremely emaciated. The jury could have properly concluded that her present physical and nervous afflictions are of the same general nature as those which affected her before the collision but that now they are much worse. Before, she carried on a normal existence of social life and regular employment. After the accident she has been unable to work at her job, requires help in the housekeeping duties of her small apartment, lacks even sufficient strength to watch television and leaves home only when it is necessary for her to see her doctor.

The determination as to whether Plaintiff's post-collision injuries were of traumatic origin and stemmed from the accident of August 3, 1967 was for the jury.

In substance her doctors testified that in their opinions the worsening of her health has resulted from the collision and that there is no hope for improvement. There was considerable other evidence which demonstrated a very serious worsening of her health immediately following the accident. The evidence supports the jury's conclusion that she has suffered grave injuries as a result of that collision.

It is frequently said that a Defendant takes a Plaintiff as he finds her and is responsible for her damages resulting from his negligent conduct even though because of the Plaintiff's pre-existing frailty of health they proved to be more severe

than they would have been in a normal person. 22 Am.Jur.2d, Damages, § 122; Prosser, Law of Torts, 3rd ed. 1964, page 300.

*Damages.*

The jury's award of damages was high but the jury heard testimony which would properly support it. The average female of Mrs. Packard's age at time of trial has a life expectancy of 18.5 years. Her earnings at the time of the accident were $4300 to $4575 annually. At the time of trial she had already lost 84 weeks of wages and her medical expenses had reached $5884.75. The jury could have found future medical expenses would total many thousands of dollars. It can be seen that the evidence presented as to past and future financial losses would total more than the amount of the verdict. In addition the jury heard evidence of pain and discomfort and of a physical deterioration which has left her an invalid with little ability for the enjoyment of life.

"The computation of damages is just as difficult as it is indispensable in our administration of justice. Ponderables, probabilities, intangibles, variables and concrete sums are added and subtracted and must be placed on one side of an equation upon the other side of which is a liquidated amount of money. No science could be more practical and inexact. None is more necessary. There are certain fixed principles but the facts of cases differ so as to make few, comparable precedents. Translating pain and suffering, past and future, into terms of money compensation is but an example of the incongruous tasks of the jury. In the natural light of reason conservative commitments must be made for an unknowable future. There are few absolutes available. Considering the problems encountered the doctrine has in practice been reasonably satisfactory. No other has survived empirical probation." McMann v. Reliable Furniture

Co., 153 Me. 383, 391, 140 A.2d 736 (1958).

We cannot say that the record demonstrates that the jury must have acted under some bias, prejudice or improper influence or have made some mistake of fact or law in determining damages. Jenkins v. Banks, 148 Me. 276, 92 A.2d 323 (1952).

*Exercise of care by Fern's driver.*

Negligence is the failure to exercise due care. Fern's was a common carrier, engaged in the transportation of the three Plaintiffs for hire at the time of the accident. While Fern's driver, like all drivers of motor vehicles, owed a duty to exercise due care in order not to injure either his passengers or other persons on the highway, a particularly high quality of vigilance was required to meet the standard of due care to his passengers. A common carrier's duty to its passengers is to exercise "the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken". Roberts v. Yellow Cab Co., Me., 240 A.2d 733 (1968).

We must test the jury's conclusion that Fern's driver was guilty of no causal negligence as to the Plaintiffs by measuring his record of conduct against this standard.

The Presiding Justice submitted to the jury the issue of Fern's care with complete and proper instructions including an explanation as to the conduct to be expected of a driver who finds himself faced with an emergency which has been created by the negligence of another, no prior negligence of his own having contributed to produce the emergency. Conduct in such a situation of emergency is expected to be not less than that which a person of ordinary prudence would have used under the same circumstances. Hoch v. Doughty, Me., 224 A.2d 54 (1966).

The jury found no causal negligence on the part of Fern's driver. On appeal the evidence with all proper inferences

drawn from it must be taken in the light most favorable to the jury's findings. The verdict is not to be set aside unless it was manifestly wrong. Morneault v. Inhabitants of Town of Hampden, 145 Me. 212, 74 A. 455 (1950).

The fact that Fern's driver had the "right of way" does not in itself determine the issue of his due care. Fern's driver was on a through way and was entitled to expect (until the contrary was apparent) that a vehicle approaching the intersection from Bartlett Street would observe the law and stop and yield the right of way to a vehicle on Walnut Street which was approaching the intersection so closely as to constitute an immediate hazard. 29 M.R.S.A. § 948; Crockett v. Staples, 148 Me. 55, 89 A.2d 737; Davis v. Simpson, 138 Me. 137, 23 A.2d 320 (1942).

In *Crockett* we closely examined the situation as to care of a Plaintiff who, driving on a through way, collided with a Defendant who entered from an intersection, failing to yield the right of way to the Plaintiff. Each driver had an unobstructed view of the other. We held then that it was the prerogative of the jury to determine at what point the Plaintiff should have known the Defendant was not going to yield the right of way and whether, at that point, Plaintiff could reasonably have avoided the collision.

While our present case differs from *Crockett* in that here the drivers' views were not unobstructed, there were several factual issues to be decided which the jury could have found to weigh heavily in their determination of either care or causation.

There were in evidence photographs of the scene of the accident and of the vehicles. The jury could have found that the taxi was travelling at a rate of 20 miles per hour. Whether this was a proper speed in which to approach this intersection under the existing circumstances was a proper jury question. The jury also had to resolve the factual issues of whether Mrs. Whitten had brought her vehicle to a stop before entering Walnut Street, at what speed she had proceeded into the intersection and at what point the driver of the taxi would have had a view down Bartlett Street depending, in part, no doubt, on what the jury found to have been the precise location of the Coca-Cola truck.

The jury may have found that Fern's driver was not negligent or that, if he was negligent, his negligence was not a proximate cause of his passenger's injuries. Taking the evidence in the light most favorable to the jury's findings, we cannot say that the findings were manifestly wrong.

*Right of Contribution.*

In 1918 this Court concluded that an enforceable right of contribution among unintentional joint tort-feasors is an equitable right founded upon acknowledged principles of natural justice. Maine thus became one of the few states which have recognized this doctrine without legislation. Prosser, The Law of Torts, 3rd Ed. page 274. Hobbs v. Hurley, 117 Me. 449, 104 A. 815 (1918). This principle was reacknowledged by Bedell v. Reagan, 159 Me. 292, 192 A.2d 24 (1963). In *Hobbs* it was held that one of two unintentional joint tort-feasors, having paid the entire sum of the judgment on which the two were jointly liable, could recover of the other his proportional part of one half.

In Scammon v. City of Saco, Me., 247 A.2d 108 (1968) we declined to abandon this accepted principle of equal contribution. At the time of the Scammon accident, however, the common law rule of contributory negligence still prevailed here.

Since then there has become effective in Maine P.L.1965, Chap. 424 (now 14 M.R.S.A. § 156) which established the doctrine of comparative negligence. The concept of a proportional recovery based upon comparative percentages of causal fault of

Plaintiff and Defendant, adopted by the legislature, strongly suggests our reconsideration of the merits of a doctrine of contribution based upon percentages of causal fault. The opportunity for examination of the principle has now properly been presented to us. Tufts v. Hatch, supra. In the meantime, our Legislature in 1969 has invited our reconsideration of this doctrine when it amended the comparative negligence law by adding:

"In a case involving multi-party defendants, each defendant shall be jointly and severally liable to the plaintiff for the full amount of the plaintiff's damages. However, any defendant shall have the right through the use of special interrogatories to request of the jury the percentage of fault contributed by each defendant."

The first sentence simply restates the common law rule. Cleveland v. City of Bangor, 87 Me. 259, 32 A. 892 (1895). The second sentence would appear to have little purpose except to lay the basis for a comparative contribution.

The doctrine of contribution is a judicial concept predicated upon the equitable principle that one of two or more tort-feasors should not in fairness be required to undertake the entire burden of indemnifying the injured party. Our determination that responsibility should be divided equally among the tort-feasors was only a step toward a truly just distribution of responsibility.

In 1963 the Wisconsin Court studied the equities of the two concepts of contribution and said (Bielski v. Schulze, 16 Wis.2d 1, 114 N.W.2d 105)

"If the doctrine is to do equity, there is no reason in logic or in natural justice why the shares of common liability of joint tortfeasors should not be translated into the percentage of the causal negligence which contributed to the injury. This is merely a refinement of the equitable principle. It is difficult to justify,

either on a layman's sense of justice or on natural justice, why a joint tortfeasor who is 5% causally negligent should only recover 50% of the amount he paid to the plaintiff from a co-tortfeasor who is 95% causally negligent, and conversely why the defendant who is found 5% causally negligent should be required to pay 50% of the loss by way of reimbursement to the co-tortfeasor who is 95% negligent."

We arrive at the same conclusion. It is particularly appropriate that when recovery by a Plaintiff is measured on the basis of proportionate fault, as our Legislature has determined it should be, the ultimate assumption of responsibility should rest on the same equitable basis. The philosophy underlying the two principles is the same although comparative negligence is in Maine a legislative creation while contribution is of judicial origin.

Our own Comparative Negligence statute predicates recovery on comparative fault, an apt choice of word because the statute is not concerned with negligence, however great, which is not a proximate cause of the injury. Under both principles the trier of the fact is called upon to determine the respective parties' shares of responsibility through negligence for the total damage suffered by the Plaintiff.

We see no reason why in logic or in justice the law should expect that the joint tort-feasor should ultimately be required to contribute more—or less—than a share of the total damages proportionate to his causal fault.

Since *Hobbs* our new Rules of Civil Procedure have made available to our Courts and our bar the well designed devices of cross-claims, special verdicts and interrogatories which are appropriate for presenting the new issues for the jury's determination. More than five years' experience in apportioning causal fault under our Comparative Negligence law convinces us that this change as to contribution will

result in no insuperable difficulties for the courts or juries.

We hold, then, that any contribution by joint tort-feasors shall be in proportion to the contributions of each one to the damages suffered by the Plaintiff.

Appeals dismissed as to judgments for Tappers and Louries against Mrs. Whitten and denied as to their judgments against Coca-Cola, all on liability only.

Appeals denied as to judgment for Mrs. Packard against Mrs. Whitten and Coca-Cola for $90,000.

Appeals of Mrs. Whitten and Coca-Cola denied on their cross-claims for contribution.

WEBBER, J., did not sit.

MARDEN, J., sat at argument but retired before the adoption of this opinion.