Robert Saltzman, Plaintiff-Appellee, v. Steven Heineman, Defendant-Appellant.

and

Steven Heineman, Third-Party Plaintiff, Appellant-Appellee, v. Michael I. Brown, Michael Shaffer and Joel Kleinfeld, Third-Party Defendants, Appellees-Appellants.

Gen. No. 52,584.

First District.

October 31, 1969.

Heineke, Conklin & Schrader, of Chicago (William H. Schrader and Richard T. Sikes, of counsel), for appellant.

Herbert F. Stride, William J. Harte, Hinshaw, Culbertson, Moelmann & Horan, and Howard French & Healy, of Chicago (John M. Moelmann, Dennis J. Horan, Richard G. French, and Russell V. Guilford, of counsel), for appellees.

TRAPP, P. J.

Two separate appeals are involved. Steven Heineman, defendant, appeals from a judgment for $49,387.55 in favor of Robert Saltzman, plaintiff, in a personal injury suit. Third-party defendants, Michael I. Brown and Joel Kleinfeld appeal from a judgment against each third-party defendant in favor of third-party plaintiff, Steven Heineman, in the amount of $1,481.62. Since the judgments against the third-party defendants are judgments for contribution, all judgments would be affected by de-

fendant's contention that there was not sufficient evidence of the defendant's involvement in the accident to submit the cause to the jury. The sole issue of fact on this question is whether the boat which struck the plaintiff was the boat operated by the defendant. A review of the evidence submitted upon this issue is necessary.

Plaintiff, with four friends, third-party defendants Brown, Shaffer and Kleinfeld, together with one Heuberger had rented a boat on Lake Geneva from which they took turns in water skiing. While plaintiff was in the water adjusting the skis two of the group asked to go ashore. Plaintiff was left with his skis and life jacket some 700 yards from the north shore and 200 yards from the west shore. While waiting in the water plaintiff was struck by a boat coming from the southeast and proceeding west toward Fontana. Plaintiff was rescued by the occupants of a nearby third party which had a skier in the water. Brown and Shaffer returned from the trip to the shore but could not find plaintiff. After searching for a few minutes they returned to Fontana.

The defendant, Heineman, was driving a Century Coronado inboard boat from the east end of the lake from Fontana at a speed of about 25 miles per hour. He was accompanied by Edelston, Stoll and Kagel. Their testimony agreed that they did not notice any bump or noise suggesting that the boat had struck an object in the water as they travelled this course. They had experienced instances when the boat hit logs or objects in the water.

The occupants of the boat which rescued plaintiff included three adults and a boy. Milne, who operated the boat, observed plaintiff in the water and the fact that the companions left in the boat. He also observed a boat coming from the southeast directly upon plaintiff, and Milne and those in his boat yelled and waved their arms in an attempt to attract the attention of those in the boat approaching plaintiff in the water. Milne observed the plaintiff in the water attempting to wave away the

192

approaching boat and tried to raise a ski in the water to attract attention. Finally plaintiff made a dive in an apparent attempt to avoid the approaching boat, but it struck him. Milne observed that the two men in this boat did not look back but proceeded west at the same speed.

Mulligan, a companion of Milne, was a skier in the water. He also observed the approach of the boat from the southeast and the occupants of his boat waved their arms at something. The Milne boat returned to pick up Mulligan after rescuing the plaintiff.

Milne, Mulligan and Abe, the third adult, described the offending boat in substantially similar terms as an inboard boat approximately 20 feet long with white and brown or mahogany finish. Mulligan described a white dart design, which is corroborated, as a design on the boat defendant was operating. Plaintiff described the markings on the boat which struck him in similar terms.

When the Milne party, with the injured plaintiff, approached a pier at Fontana, they saw a Century Coronado tied up and refueling at the pier. It is not denied that one or more members of defendant's party were accused of striking a skier in the water by a person or persons in the Milne boat as it came to the pier.

There is evidence that another Century boat of substantially the same color and size was tied up at the Gordie pier some 100 feet away. It does not appear in the record whether this boat also had the dart design described by the witnesses. Such design was not common to all Century boats. Huss, who operated the pier servicing the boats at issue, could not recall how long the second Coronado boat had been tied up at the Gordie pier, and he could not recall seeing any person near it.

While the testimony of witnesses concerning an accident can be expected to vary to a considerable degree and even to be in conflict in material respects, we think it is clear from the foregoing review that taking the reasonable inferences most favorable to the plaintiff,

there was sufficient evidence from which the jury could find that the boat which struck the plaintiff was the boat driven by defendant, Steven Heineman.

The positive indications are that within a few minutes after defendant docked at the Fontana pier to refuel, a rescue boat arrived at the same pier with the injured plaintiff, who, at most, had been several hundred yards from this pier, containing three adult rescuers who were eyewitnesses to the fact that plaintiff was struck by a Century Coronado with an inboard motor with identical markings of the boat driven by defendant which boat was travelling in the same direction as defendant was driving. The scene described by the witnesses was not a crowded scene. Only one boat, and that travelling in the direction defendant travelled, was described. The marine pier attendant watched defendant come in, but does not state that others came in at that time. The boat defendant drove is the only one known to be travelling at the right place in the right direction at the right time with the right markings.

Neither do we find the fact that the eyewitnesses only observed one or two persons in the offending boat, when there were in fact four persons in the boat a serious obstacle to identification because two of the persons were lying down upon the seats and plaintiff, Saltzman, and eyewitnesses Milne and Mulligan saw two boys in the cockpit, which is where defendant and Steven Stoll were.

We do not think the jury was required to consider the observation of the presence of such a boat at the pier south of Duncan's pier some time after the injured man was brought ashore as a complete obstacle to identification of the boat driven by the defendant as the offending boat. Where the known circumstances fit, the jury is not required to give equal validity to unknown circumstances that might fit if established.

■ We think the motion for directed verdict, based upon the lack of identification of the boat causing the accident, was properly overruled.

Complaint is next made of preliminary remarks of the court to the jury. It appears that while the court was explaining the contentions of the parties to the jury, counsel for defense interrupted the court and said: "May I be excused? We also contend it was not our boat." The court replied: "Whatever the defenses are you folks will hear during the course of the trial." The court then continued to explain the claims of the parties. The court was not requested to explain to the jury that proof of ownership of the boat was a part of plaintiff's case as opposed to a defense. We cannot treat the general preliminary remarks as formally as instructions to the jury. The special verdict given to the jury clearly required the jury to first determine whether it was the Edelston boat which struck the plaintiff before considering the question of defendant, Steven Heineman's negligence.

■ Defendant complains of restrictions in cross-examination of plaintiff concerning the color and markings of the boat which struck him. Out of the presence of the jury the court advised counsel that he could examine as to the questions and answers given in deposition. It is also asserted that the examination of the witness, Huss, was restricted. He was the operator of the marine service where the boat in evidence tied up. He testified that there were other boats probably identical to defendant's boat in manufacture, color and size on Lake Geneva. The court sustained an objection to a question concerning boats of such description being at the pier on the day before and the day after the event at issue. The ruling that the question was too remote from the period concerned was justified.

■ Complaint is made that plaintiff was allowed to elicit a conversation between an auburn haired boy and a dark haired boy. The witness was allowed to state that the dark haired boy said to the auburn haired boy: "Don't you remember when we thought we hit a log?" He was also permitted to say that just after this the auburn haired boy said to the dark haired boy: "They'll never make it stick." This was permitted over the objection that defendant was not shown to be present. The witness had stated that the two boys had identified themselves as being occupants of the Century Coronado which was tied up at Duncan's pier (the Edelston boat). The evidence shows that Edelston had auburn hair. All four boys in the Edelston boat had testified that they had not experienced impact between the boat and anything in the water. The alleged statement was made shortly after the accusation had been made, that this Century Coronado was the boat that struck a boy in the water. We think that the conversation by two persons identified as being occupants of the Century Coronado immediately after the accusation that the boat had struck a swimmer was in the nature of impeachment of the common statement of the occupants of this boat at the trial that they had no recollection of hitting any object in the water. While the trial court, in discussion with counsel, apparently erroneously construed the conversation as "a supposed admission," there is nothing to indicate that the court's view was communicated to the jury.

■ Complaint is made that "insurance" recovery was brought before the jury. Asked to describe the boat, the witness, Milne, made reference to interviews by insurance companies. No motion was made to strike the witness' answer or to admonish the jury to disregard it. Nothing appears that would take it out of the category of an inadvertent remark by a witness to a legitimate inquiry. Such incidents have been held not to be the basis for a mistrial. Williams v. Consumers Co., 352 Ill 51, 55,

185 NE 217; Schaffer v. Dorsey, 70 Ill App2d 390, 217 NE2d 19.

The case was tried in terms of the Wisconsin statute and practice concerning comparative negligence. The basis for the claim of negligence by the third-party defendants was the violation of an ordinance governing swimming and boating on Lake Geneva. This ordinance declared that all areas of the lake were a boating and traffic zone, except for swimming zones within a specified number of feet of the shoreline or piers constructed in the lake. The ordinance also provided:

> "4. No person shall swim more than 100 feet from the shore or more than 50 feet from any pier, anchored raft or boat unless he is accompanied by a boat. Such boat shall stay reasonably close to and guard such swimmer. If there is more than one swimmer, each shall be accompanied by a separate boat above described."

The third-party complaint alleges that the plaintiff and his companions, the third-party defendants, were engaged in the common sport and pastime of renting and operating the boat and skiing and swimming, and that under the ordinance each was charged with the responsibility and duty to keep a lookout, warn other boats of a person in the water, and when in the boat to stay reasonably close to the swimmer in compliance with the statute. The court gave defendant's instruction that the plaintiff and the third-party defendants had a duty to exercise ordinary care, each for his own safety and for the safety of each other.

Pursuant to Wisconsin comparative negligence practice, the jury was instructed in a special interrogatory that if they found certain parties, or all parties, negligent, and also that the boat operated by defendant struck the plaintiff, they must determine to what degree each person found negligent contributed to the causation

197

of the injury. Pursuant to such interrogatory, the jury's finding was as follows:

> "Assuming the negligence of all parties found negligent to be a total of 100%, what percent of such total negligence do you attribute to the following named persons:

| | | "ANSWER |
|---|---|---|
| "I | Plaintiff Robert Saltzman | 3.0% |
| "II | Defendant Steven Heineman | 85.0% |
| "III | Steve Heuberger | 3.0% |
| "IV | Defendant Michael I. Brown | 3.0% |
| "V | Defendant Michael Shaffer | 3.0% |
| "VI | Defendant Joel Kleinfeld | 3.0%" |

Objection is made that plaintiff's counsel, in commenting upon the special interrogatories which advised the jury that if it found defendant negligent, and also found the plaintiff and others negligent, it would have to attribute percentages of negligence to each one, stated that he hoped they would not attribute over five or ten percent negligence to plaintiff and a small percentage to others. Counsel said that to find a greater percent of negligence attributable to plaintiff would prevent him receiving that which was properly due him. In his concluding remarks, counsel for plaintiff asked the jury:

> "To find that Bob Saltzman didn't cause or contribute to this accident, to further find if he did his relative causation was between five and ten percent because if it is more it will have consequence and I think I would also ask you that in your good judgment you will award a total sum to Bob Saltzman between $75,000 and $100,000."

It is claimed that this argument invited the jury to raise the amount of damages in proportion to the com-

parative negligence found with respect to plaintiff. We do not find this inference in the argument. We find no suggestion that the jury, so to speak, manipulated the findings to reach a result beyond the law as in the City of Quincy v. Best Supply Co., 17 Ill2d 570, 162 NE2d 373 (1959).

■ The jury returned a verdict for injuries and special damages in the sum of $50,915. Complaint is made of the amount of the verdict. It is pointed out that there is no showing of loss of earnings or impairment of abilities, although it is granted that there is atrophy and a loss of power in the right hand. Dr. Cascino, a practicing neurosurgeon, testified that there was a depressed skull fracture with a piece of bone pushed in which required a craniotomy. He removed several small pieces of bone and some hairs that were laying on the surface of the brain. He could not replace the bone because he had reason to believe it was infected. He cleaned a blood clot from the brain, and noted that the dura or covering of the brain was torn probably ¼ of one inch. A discolored spinal fluid was escaping. The hemorrhage was not in the brain but in the spinal fluid that circulates around the brain. He closed the opening in the dura.

There is now missing bone of the dimension 2 centimeters by 4 centimeters. The space is filled with scar tissue. While it is resistant, it is not as resistant as bone would be. Dr. Cascino testified that he was greatly concerned that for the last 18 months prior to 1966 the patient began noticing attacks which he described as fuzzy. He would become disoriented. The attacks would last about five minutes.

Dr. Cascino obtained brain wave reports which were normal for both waking and sleeping. The last of the fuzzy attacks was February 2, 1967. Dr. Cascino expressed an opinion that scar tissue undergoes changes, and that it could be a source of irritation that would not

199

appear in brain wave tests. Scarring takes many years. He felt that the headaches the patient experiences could be the result of the involvement in the accident.

Dr. Cascino's testimony was the only medical testimony presented. Under all the circumstances we are unable to say that the verdict is excessive.

It is argued that the proximate cause of the injury to plaintiff was the fact that he was swimming in Lake Geneva in violation of the ordinance and that such negligence, as a matter of law, should bar recovery. A somewhat similar argument is that the jury finding of causal negligence—three percent for plaintiff as against eighty-five percent charged to defendants, is so disproportionate that it cannot stand. Such argument must be viewed in the light of the clear testimony that the plaintiff was waving and yelling to attract the attention of the defendants and that the witnesses in the Milne boat were doing likewise. Plaintiff attempted to avoid the oncoming boat but did not succeed. We cannot say that as a matter of law that the jury's apportionment of causal negligence was so erroneous as to require that it be set aside. Caldwell v. Piggly-Wiggly Madison Co., 32 Wis2d 447, 145 NW 2d 745. Again, under the pleading and the matters in evidence, we cannot say that the court erred in denying the motion of the third-party defendants for a directed verdict.

The judgment order directs that plaintiff have and recover from the defendant, Heineman, the amount of the verdict ($50,915) less three percent attributable to the causal negligence of plaintiff, or the sum of $49,-387.55, but further provides that Heineman, as third-party plaintiff, have and recover the sum of $1481.62 from each of the third-party defendants.

Since the jury found the same percentage of causal negligence to each of the plaintiff and third-party defendants, plaintiff cannot recover from them. Walker v. Kroger

Grocery & Baking Co., 214 Wis 519, 252 NW 721, 92 ALR 680.

Under the Wisconsin practice in comparative negligence, a plaintiff can recover the full amount of damages awarded from any defendant, but then must seek contribution from any or all other defendants. Bielski v. Schulze, 16 Wis2d 1, 114 NW2d 105. One tort-feasor may recover any contribution even though his causal negligence is greater than that of a joint tort-feasor. It is error to apportion judgment as between tort-feasors. Caldwell v. Piggly-Wiggly Madison Co., 32 Wis2d 447, 145 NW2d 745.

The Wisconsin statute providing comparative negligence has no direct application to the doctrine of contribution. Bielski v. Schulze, 16 Wis2d 1, 114 NW2d 105. Contribution is based on the common liability of joint tort-feasors to the injured party. It applies only when one joint tort-feasor pays more than his equitable share of the damages. Mutual Automobile Ins. Co. of the Town of Herman v. State Farm Mut. Automobile Ins. Co., 268 Wis 6, 66 NW2d 697. A defendant who is not more causally negligent than the injured party is not liable either to the injured party for damages, or to a joint tort-feasor for a contribution.

The defendant, Heineman, contends that there is no legal justification which, in fact, assigns the twelve percent causal negligence to the third-party defendants to him. It is perhaps ironic that defendant's third-party complaint brings about the issue not complained of. The fact, however, that Heineman is not able to or entitled to collect contribution from the third-party defendants does not alter his liability for the amount of the judgment. Under the Wisconsin statute and practice plaintiff's damages are diminished in the proportion of the causal negligence attributable to the plaintiff to the causal negligence of all other participants. Plaintiff's negligence is not com-

pared with that of a single tort-feasor to reduce recovery. Chille v. Howell, 34 Wis2d 491, 149 NW2d 600.

We have considered the many other errors urged by defendant but find nothing that calls for reversal of the judgment.

The judgment in favor of the plaintiff against the defendant, Heineman, is affirmed. The judgments in favor of Heineman as third-party plaintiff for contribution against third-party defendants are reversed as to those third-party defendants who appealed.

Affirmed in part, reversed in part.

SMITH and CRAVEN, JJ., concur.