OTIS ELEVATOR COMPANY OF MAINE, INC., and Otis Elevator Company of New Jersey, Inc.[1]

v.

F.W. CUNNINGHAM & SONS.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1982.

Decided Jan. 4, 1983.

---

1.  Hereafter appellants Otis Elevator Company of Maine, Inc. and Otis Elevator of New Jersey, Inc. will be referred to as Otis Elevator and treated as a single entity. Appellants urged us to follow this approach as we did in the related case of *Minott v. F.W. Cunningham & Sons,* 413 A.2d 1325, 1327 n. 1 (Me.1980).

**336**

Norman & Hanson, James D. Poliquin (orally), Portland, for plaintiff.

Richardson, Tyler & Troubh, Wendell G. Large (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

VIOLETTE, Justice.

Plaintiff, Otis Elevator, appeals from a summary judgment entered in Superior Court, Cumberland County, dismissing its action for contribution against F.W. Cunningham & Sons (hereafter Cunningham). This action for contribution arose out of an underlying action for wrongful death and conscious pain and suffering brought by Cheryl Minott, administratrix of the estate of Paul Minott, against Otis Elevator and Cunningham.[2] Following a trial in that action, the jury by special verdict determined: (1) Paul Minott, Cunningham and Otis Elevator were each guilty of negligence which proximately caused Paul Minott's death; and (2) Paul Minott's negligence was equal to that of Cunningham, but less than that of Otis Elevator. The Superior Court entered judgment against Otis Elevator and in favor of Cunningham.[3] That judgment was affirmed in *Minott v. F.W. Cunningham & Sons,* 413 A.2d 1325 (Me.1980).[4]

On November 17, 1981, Otis Elevator commenced this action against Cunningham seeking contribution in the amount of $27,-416.85, plus interest and costs. This amount allegedly represented Cunningham's proportionate fault (30%) of the total damages ($63,972.66) paid by Otis Elevator.[5] Cunningham filed a motion for summary judgment on February 26, 1982. It argued that this action for contribution was barred by the "common liability" rule because it was found to be not liable to Minott in the underlying action. The Superior Court granted the motion stating, "The Court can find no reason why defendant should be held liable in contribution to the plaintiff when defendant was found by a jury not to be liable to the plaintiff in the underlying action." Otis Elevator then appealed that ruling by the Superior Court to this Court.[6]

The issue presented by this appeal is whether, on the facts of this case, a joint tort-feasor[7] directly liable for the death of another is entitled to contribution from another joint tort-feasor whose negligence also proximately caused the death of that person, but who was not legally liable under the comparative negligence statute as it was applied in the Minott trial, because his

---

**2.** *Minott,* 413 A.2d at 1327–28, sets forth the facts of this underlying action.

**3.** As this Court noted in *Minott,* 413 A.2d at 1328 n. 3, that case was presented to the jury on the mutually agreed upon theory that the fault of the deceased was compared with the fault of each defendant separately rather than the combined fault of all the defendants. Since the theory was not challenged on that appeal, this Court did not express an opinion whether it was in accord with the comparative negligence statute, 14 M.R.S.A. § 156; nor do we now express any opinion.

**4.** Cunningham was informed at that oral argument that it was not a proper party to the appeal because it had no interest in the outcome of that appeal.

**5.** We do not express any opinion whether Otis Elevator properly computed the amount of contribution, if any, owed to it by Cunningham.

**6.** This Court remanded the case on May 21, 1982, to clarify whether the judgment was entered against both of the identically named corporate defendants or against only the Maine corporation or the New Jersey corporation. The Superior Court subsequently entered judgment against both the Maine and New Jersey corporations. The case then became ripe for appellate review.

**7.** For purposes of this opinion, the term joint tort-feasor refers to unintentional joint tort-feasors.

fault was equal to that of the deceased.[8] Because we conclude that Cunningham's non-liability in the underlying action does not bar this action for contribution, we sustain the appeal and vacate the judgment.

### I.

Cunningham relies on *Hobbs v. Hurley,* 117 Me. 449, 104 A. 815 (1918) in support of its position that the instant contribution action was properly dismissed. *Hobbs* arose out of an underlying personal injury action involving four defendants. In the underlying action, two of the four defendants were found to be not liable. One defendant was not liable because he was not negligent, and, although the other non-liable defendant was negligent, he was not legally liable to the injured party because he was a servant of Hobbs and Hurley, the two liable defendants, and, as a matter of law, both master and servant could not be held jointly liable. After Hobbs satisfied in full the joint judgment rendered against both Hurley and himself, he commenced the action for contribution against Hurley.

*Hobbs,* 117 Me. at 451–53, 104 A. at 816–17, established in Maine the equitable right of equal contribution between unintentional joint tort-feasors. On appeal, Hurley argued that he should only contribute one-fourth of the amount of the judgment because four persons were involved in the underlying transaction. The *Hobbs* Court rejected this argument because two of these four persons were found to be not liable in the underlying action. *Hobbs,* 117 Me. at 453–54, 104 A. at 817–18. Therefore, Hurley had to contribute one-half of the damages. Although it is apparent from the above discussion that *Hobbs* did not directly address the issue presented in this case, Cunningham contends *Hobbs* established the still viable principle that "common liability" is a prerequisite to contribution. Since Otis Elevator and itself had no "common liability" to the deceased in the instant case, Cunningham concludes the Superior Court properly dismissed this action.

In support of Cunningham's position that the "common liability" rule bars this action for contribution, we recognize that other jurisdictions do not allow contribution from a joint tort-feasor at fault but not liable to the injured party because their fault was less than that of the injured party. *See Saltzman v. Heineman,* 116 Ill.App.2d 189, 201, 253 N.E.2d 520, 526–27 (1969) (applying Wisconsin law); *Nora v. Township of Livingston,* 171 N.J.Super. 579, 582–83, 410 A.2d 278, 280 (1980); *Spitzack v. Schumacher,* 308 Minn. 143, 145, 241 N.W.2d 641, 643–44 (1976). Deeming "common liability" to be the essence of contribution, these courts consistently applied the "common liability" rule to bar the contribution action. *Saltzman,* 116 Ill.App.2d at 201, 253 N.E.2d at 527; *Nora,* 171 N.J.Super. at 583–84, 410 A.2d at 280; *Spitzack,* 308 Minn. at 145–46, 241 N.W.2d at 643. Therefore, even though the negligence of two joint tort-feasors concurrently caused injury to another, these courts did not allow contribution from the joint tort-feasor not directly liable to the injured party due to modified comparative negligence, because the joint tort-feasors did not share the requisite "common liability" to the injured party.

We initially hold that *Hobbs,* 117 Me. at 449, 104 A. at 815, does not control the instant case to absolutely bar this action for contribution. As the equitable doctrine of contribution has evolved in Maine, this Court has not considered the element of "common liability" to be the controlling factor in the decision whether to allow contribution from a negligent joint tort-feasor not directly liable to the injured party. *See Bedell v. Reagan,* 159 Me. 292, 298, 192 A.2d 24, 27 (1963). Rather, this Court has stressed that "contribution among unintentional joint tort-feasors is an equitable right founded upon acknowledged principles of natural justice." *Packard v. Whitten,* 274 A.2d 169, 179 (Me.1971). As we noted in *Packard,* 274 A.2d at 179, this principle was

---

**8.** 14 M.R.S.A. § 156 provides in relevant part:
    If [a] claimant is found by the jury to be equal-

ly at fault, the claimant shall not recover.

first enunciated in *Hobbs,* 117 Me. at 451, 104 A. at 816, and then reacknowledged in *Bedell,* 159 Me. at 295, 192 A.2d at 26. It is a doctrine predicated on considerations of fairness between tort-feasors whose negligence collectively causes injury to another. *Packard,* 274 A.2d at 180.

By adopting the doctrine of comparative contribution in *Packard,* this Court expressed a strong policy that tort-feasors should contribute their fair share of the damages. The *Packard* Court stated, "We see no reason why in logic or in justice the law should expect that the joint tort-feasor should ultimately be required to contribute more-or less-than a share of the total damages proportionate to his causal fault." *Packard,* 274 A.2d at 180. In sum, this Court in *Bedell,* 159 Me. at 297, 192 A.2d at 27, quoted the following passage from F. Harper & F. James, *The Law of Torts* § 10.2 at 718 (1956) which forcefully sets forth the reason we do not consider "common liability" to be the essence of contribution:

> If the purpose of contribution is to make the wrongdoers share the financial burden of their wrong, then the primary element of contribution should be the participation of the wrongdoers in acts or omissions which are considered tortious and which result in injury to a third person. The fact that one of the tort-feasors has a personal defense if he were to be sued by the injured party would seem to be irrelevant.

In *Bedell,* 159 Me. at 292, 192 A.2d at 24, this Court allowed contribution from a tort-feasor immune from a direct suit by the injured party because of the doctrine of interspousal immunity. The *Bedell* Court weighed the policy reasons supporting contribution against those supporting interspousal immunity. In doing so, it expanded the principle set forth in *Hobbs,* 117 Me. at 451, 104 A. at 816, and deemed that the lack of "common liability" was only one factor to be considered in the decision whether or not to allow contribution. It concluded that the policies underlying interspousal immunity would not be frustrated by allowing contribution and, therefore, "[t]he equities clearly preponderate in favor of just contribution for the third party rather than of undeserved immunity for the joint tort-feasor husband." *Bedell,* 159 Me. at 299–300, 192 A.2d at 28.

The *Bedell* analysis was subsequently applied in *Roberts v. American Chain & Cable Co.,* 259 A.2d 43, 48 (Me.1969). *Roberts* presented the issue whether contribution would be allowed from an employer immune from suit because of the workers' compensation system.[9] The *Roberts* Court recognized that the overwhelming majority of jurisdictions did not allow contribution because there was no "common liability" between the non-immune tort-feasor and the employer. *Roberts,* 259 A.2d at 47. Although this Court did not allow contribution from an assenting employer, it did not base its decision on the "common liability" rule. In fact, the *Roberts* Court expressly cited a passage from *Bedell,* 159 Me. at 298, 192 A.2d at 27, that criticized application of the "common liability" rule as an absolute bar to contribution. *Roberts,* 259 A.2d at 48.

The significance therefore of *Roberts* to the instant case is that it further established that this Court would not blindly adhere to the "common liability" rule as a prerequisite for contribution. The *Roberts* Court carefully analyzed the purposes underlying the employer's immunity and concluded not only that these purposes were entirely different from those supporting the doctrine of interspousal immunity, but the purposes were more compelling. *Roberts,* 259 A.2d 48–50. These distinctions led the *Roberts* Court to reach a result different from that in *Bedell.* In balancing the policies underlying contribution against those supporting the employer's immunity, the court concluded: "The equities, however, which support contribution between concur-

---

**9.** 39 M.R.S.A. § 4 now provides in relevant part: "Such employers shall be exempt from civil actions because of such injuries either at common law or under sections 141 to 148, under Title 14, sections 8101 to 8118 or under Title 18–A, section 2–804."

rently negligent tort-feasors are, not so compelling as to justify frustration of the purposes of our workmen's compensation act by carrying the doctrine over into our legislative program regulating the industrial injury." *Roberts,* 259 A.2d at 48.

We conclude that the analysis set forth in *Bedell,* 159 Me. at 292, 192 A.2d at 24, and later utilized in *Roberts,* 259 A.2d at 43, should apply in the instant case to determine whether contribution should be allowed under the circumstances presented here. The issue, therefore, becomes whether the policies underlying the Maine version of modified comparative negligence will be frustrated by allowing contribution from a tort-feasor not directly liable for the injury to another because his fault is equal to that of the injured party. *See* Hertz, *The Tort Triangle: Contribution From Defendants Whom Plaintiffs Cannot Sue,* 32 *Me.L.Rev.* 83, 103 (1980).

Modified comparative negligence represents a less harsh version of the draconian contributory negligence rule. Under the contributory negligence rule, a plaintiff would be barred from recovery even if his negligence only contributed to the accident in the slightest degree. While the present Maine rule assuages the unfairness of that rule, it raises the bar of contributory negligence when a plaintiff's fault is equal to or greater than the defendant's.[10] Therefore, although the Maine Comparative Negligence Statute modified the policy supporting contributory negligence, it did not entirely repudiate that policy.

■ Contributory negligence rested on a "policy of making the personal interests of each party depend upon his own care and prudence." W. Prosser, *Handbook of the Law of Torts* § 65 at 418 (4th ed. 1971). Significantly, the policy focused only upon plaintiff's personal incapacity to recover.

*Hertz, supra* at 130. Prosser described the nature of contributory negligence as follows:

> [T]he defense does not rest upon the idea that the defendant is relieved of any duty toward the plaintiff. Rather, although the defendant has violated his duty, has been negligent, and would otherwise be liable, the plaintiff is denied recovery because his own conduct disentitles him to maintain the action. *In the eyes of the law both parties are at fault; and the defense is one of plaintiff's disability, rather than the defendant's innocence.*

*Prosser, supra* § 65 at 417 (emphasis supplied). In sum, the modified comparative negligence statute reflects the policy that a plaintiff should not recover from someone less than or equally at fault because society disapproves of plaintiff's behavior and views recovery under those circumstances as unfair. *See Bradley v. Appalachian Power Co.,* 256 S.E.2d 879, 888 (W.Va.1979); Note, *Comparative Negligence,* 81 *Colum.L. Rev.* 1668, 1672 (1981).

We conclude that the policies underlying modified comparative negligence are not frustrated by allowing contribution from a negligent joint tort-feasor not directly liable to the injured party because that injured party's fault was equal to or greater than that of the tort-feasor. Since the rationale supporting modified comparative negligence concerns only plaintiff's disability and does not disavow a tort-feasor's fault, the policies underlying modified comparative negligence simply do not come into play once an injured party has been paid his judgment by a joint tort-feasor found more negligent than he was and, therefore, directly liable to him. At that point, considerations shift solely to concerns of what is fair between tort-feasors whose negligence collectively caused injury to another. Al-

---

10. 14 M.R.S.A. § 156 provides in relevant part:

Where any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damages shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage...

If such claimant is found by the jury to be equally at fault, the claimant shall not recover....

though at first blush it may seem unfair for a tort-feasor to contribute a share of the damages proportionate to his causal fault when he is not directly liable to the injured party, we think it is more unfair for a tort-feasor to pay damages in excess of his proportionate share under the circumstances presented here. The equities clearly support allowing contribution in favor of a tort-feasor in the position of Otis Elevator, especially when it is realized that the purposes underlying the injured party's disability not only are not frustrated, but that the purposes have no application to considerations of what is just between joint tort-feasors. On the other hand, to not allow contribution would certainly frustrate the policy forwarded in *Packard* that tort-feasors should in fairness be required to contribute a share of the total damages proportionate to their causal fault. *Packard,* 274 A.2d at 180.

■ We hold only that a joint tort-feasor directly liable for the injury of another may seek contribution from another joint tort-feasor whose fault also caused the injury of the other, but was not legally liable to that person because, as the Minott case was tried, his fault was not greater than that of the injured person. Therefore, the Superior Court erred in ruling that the judgment in favor of Cunningham in the underlying action barred this action for contribution. We cannot determine from the record on appeal what amount of contribution, if any, Otis Elevator could collect from Cunningham. To defeat the motion for summary judgment, it was only necessary for Otis Elevator to show some fault on the part of Cunningham. Although the record before this Court does not reveal whether the jury found the percentages of fault contributed by each defendant in the underlying action, the record sufficiently generates the factual issue whether Paul Minott's death was caused at least in part by the fault of Cunningham. Accordingly, the Superior Court erred as a matter of law by granting Cunningham's motion for summary judgment in this case.

## II.

■ Cunningham argues that Otis Elevator should not be allowed to demand contribution in this separate action after failing to assert a cross-claim for contribution in the underlying action. We disagree. Cross-claims are simply not compulsory. M.R.Civ.P. 13(g) provides in relevant part: "A pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." (Emphasis added). The Reporter's Notes to rule 13(g) state, "A cross-claim is never compulsory, and it is permissible when it arises out of the same transaction as the original action or a counterclaim therein or relates to property that is the subject matter of the original action." 1 Field, McKusick & Wroth, *Maine Civil Practice* at 262 (2d ed. 1970). With regard to the federal counterpart of rule 13(g), Wright and Miller state: "A party who decides not to bring his claim under Rule 13(g) will not be barred by res judicata, waiver, or estoppel from asserting it in a later action...." 6 Wright & Miller, *Federal Practice and Procedure* § 1431 at 164–65 (1971). Accordingly, we conclude that Otis Elevator's ability to maintain this separate action for contribution is not affected by its not having asserted a cross-claim in the underlying action.

## III.

■ Cunningham also asserts the affirmative defense of laches claiming that Otis Elevator's filing of this contribution action constituted "an omission to assert a right for an unreasonable and unexplained length of time ... under circumstances prejudicial to the adverse party." *Christman v. Parrotta,* Me., 361 A.2d 921, 926 (1976), *quoting A.H. Benoit & Co. v. Johnson,* 160 Me. 201, 207, 202 A.2d 1, 5 (1964). We conclude this contention lacks merit. Otis Elevator clearly asserted this claim within a reasonable period of time. Furthermore, Cunningham did not show any unfair prejudice to itself

under the circumstances presented here. Although they were not directly liable to Minott, they were found to be at fault. Under those circumstances, Cunningham certainly could have expected Otis Elevator to seek contribution in the amount of Cunningham's proportionate share of the damages.

The entry is:

Judgment vacated.

Remanded to Superior Court for further proceeding consistent with this opinion.

All concurring.